**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| THE MAJESTIC STAR CASINO, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:08-CV-126-PRC |
| | ) | |
| UNITED STATES STEEL CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on (1) Plaintiff The Majestic Star Casino, LLC's Motion for Partial Summary Judgment and Designation of Evidence in Support of its Motion for Partial Summary Judgment [DE 39], filed by Plaintiff on April 15, 2011; (2) the Motion for Summary Judgment of United States Steel Corporation [DE 41], filed by Defendant on April 15, 2011; and (3) the Plaintiff The Majestic Star Casino, LLC's Motion to Strike Defendant United States Steel Corporation's Supplemental Designation [DE 52], filed by Plaintiff on June 6, 2011.

## PROCEDURAL BACKGROUND

On April 24, 2008, Plaintiff The Majestic Star Casino, LLC ("Majestic") filed a Complaint against Defendant United States Steel Corporation ("U.S. Steel") requesting judgment declaring that the Easement Agreement between the two parties is terminated and an award of related damages and fees. On June 16, 2008, U.S. Steel filed its Answer.

On April 15, 2011, Majestic filed its Motion for Partial Summary Judgment and U.S. Steel filed its Motion for Summary Judgment. On May 13, 2011, both parties filed responses to their opponent's Motion. On May 27, 2011, Majestic filed a reply in support of its Motion, and on May 31, 2011, U.S. Steel filed a reply in support of its Motion. On June 6, 2011, Majestic filed the

instant Motion to Strike, which is now fully briefed. On August 8, 2011, a hearing was held at which the parties presented argument regarding which of Majestic's claims are properly before the Court in the instant Motions for Summary Judgment.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. §636(c).

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R.

Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward

with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**FACTUAL BACKGROUND**

On August 16, 1954, U.S. Steel entered into an Easement Agreement with Universal Atlas Cement Company, the predecessor in title to Majestic, granting U.S. Steel an easement to install, maintain, and operate electrical transmission equipment for the transmission of electricity over property now owned by Majestic.

The Transmission System consists of approximately 115 towers, 98 of which are owned and maintained by U.S. Steel. It is a means of transmitting energy between a U.S. Steel plant in Chicago, Illinois, known as South Works, and a plant in Gary, Indiana, known as Gary Works. U.S. Steel has not transmitted electricity over the Transmission System since 1999. From 1999 through 2009, there was an agreement between U.S. Steel and Northern Indiana Public Service Company ("NIPSCO") giving NIPSCO a license to use the Transmission System. It does not appear that NIPSCO transmitted power over the Transmission System during that time.

U.S. Steel has routinely inspected, maintained, and repaired the 98 towers it owns and the

4

related electrical equipment from the time of the installation of the Transmission System to the present, including throughout the time of the NIPSCO lease.

## ANALYSIS

**A.     Motion to Strike**

In the instant Motion to Strike, Majestic requests that the Court strike a declaration, attached as Exhibit A to U.S. Steel's reply brief in support of U.S. Steel's Motion for Summary Judgment. Majestic argues that U.S. Steel improperly addressed an issue for the first time in its reply brief and impermissibly attached the declaration in an attempt to create a question of fact on that issue.

In its Motion for Summary Judgment, Majestic moves for summary judgment on several issues, including a breach of contract claim against U.S. Steel for U.S. Steel's failure to pay property taxes. In its own Motion for Summary Judgment, U.S. Steel addresses only the issue of whether or not the easement has been terminated. In its reply brief in support of its Motion, however, U.S. Steel addresses the content of Majestic's claim for breach of contract for U.S. Steel's alleged failure to pay property taxes, with the declaration attached in support of its argument.

However, as described below, the breach of contract claim for failure to pay property taxes is not properly before the Court and will not be considered as part of Majestic's Motion for Summary Judgment. Accordingly, its Motion to Strike is hereby **DENIED as moot**.

**B.     Cross Motions for Summary Judgment**

In its Motion, Plaintiff requests that the Court enter judgment declaring: (1) that the easement granted to U.S. Steel is terminated; (2) that three of U.S. Steel's towers impermissibly encroach on Majestic's real estate; and (3) that U.S. Steel is liable to Majestic for the payment of property taxes. Defendant moves for summary judgment on the question of whether or not the easement has been

terminated. Before reaching the merits of the Motions, the Court must determine which claims are properly before the Court.

### 1. *Amendment of the Complaint*

In its Motion for Summary Judgment, Majestic moved for summary judgment on two claims that were not included in its Complaint: a claim for breach of contract regarding U.S. Steel's alleged failure to pay property taxes as required by the Agreement, and a claim for a declaration of judgment declaring that three of U.S. Steel's towers are outside the geographic area defined in the Agreement and thereby encroach on Majestic's real estate.

Majestic acknowledges that these claims were not included in its original Complaint, but argues that U.S. Steel has consented to trying these two issues and had notice that they would be before the Court as part this case. Majestic argues that these issues were investigated during discovery and that U.S. Steel expressly consented to the claim for breach of contract for payment of taxes by stating, in a Motion to Extend Deadlines, that "there is a secondary issue relating to Majestic Star's claim for payments as a result of the continuing presence of the Towers . . . and for real estate taxes."

U.S. Steel denies that it had any notice that either of those issues were before the Court. It claims that Majestic's demand for payment of property taxes didn't put U.S. Steel on notice that Plaintiff intended to litigate those claims before the Court, and that there was never any discussion of the encroachment. Furthermore, U.S. Steel argues that there are unresolved material issues of fact regarding U.S. Steel's alleged encroachment and its alleged liability for the taxes.

Federal Rule of Civil Procedure 15 provides for the amendment of pleadings. Rule 15(b) provides for amendments during and after trial, and provides, in relevant part, "The court should

freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits," and that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(1), (2). Behavior during discovery can, in some situations, demonstrate that the parties consented to try a particular issue that was not included in the written Complaint. *See, e.g., Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 879 (7th Cir. 2005) ("The defendant went through four years of discovery and other pretrial maneuverings without objecting to the fact that its opponent was patently engaged in endeavoring to prove racial as well as age discrimination. No more was required to satisfy Rule 15(b)."); *Contour Design, Inc. v. Chance Mold Steel Co.*, No. 09cv451, 2011 WL 1831738, at *10, 2011 U.S. Dist. LEXIS 52176, at *29, 2011 DNH 78, (D.N.H. May 12, 2011) ("Contour has been arguing that Chance misappropriated its firmware and wrongfully retained its tooling since just after the amended complaint was filed, and both parties have engaged in discovery on those issues, allowing Contour to pursue those theories at trial would clearly 'aid in the presenting the merits' [sic] without unfairly prejudicing Chance's defense." (quoting Fed. R. Civ. P. 15(b)(2)).

In this case, although a few questions about taxes and the alleged encroachment were asked during depositions, there was not full and complete discovery on those issues by both parties. Several years after the case was filed, Majestic sent an invoice to U.S. Steel regarding the tax obligations, but counsel for U.S. Steel represented to the Court that the conversations with Majestic about taxes did not indicate that the issue was going to be included at trial. Therefore, the Court concludes that U.S. Steel did not consent, either impliedly or expressly, to try these matters; that there was no leave of Court granted to amend the Complaint; and that U.S. Steel would be likely to

suffer prejudice if the additional claims were added at this late stage in the litigation. Accordingly, Majestic's claims regarding encroachment and payment of property taxes are not before the Court and the only issue to be decided in the pending Motions for Summary Judgment is whether the easement has been terminated.

*2. The Easement Agreement*

Majestic argues that the purpose of the easement is to transmit electricity, and the easement therefore terminates if U.S. Steel fails to transmit electricity with the equipment for five consecutive years. U.S. Steel argues that the Easement Agreement gives U.S. Steel authority to do what needs to be done to ensure that electricity can be transmitted by the equipment.

Paragraph 1 of the Easement Agreement provides that U.S. Steel is granted "permission and authority to install maintain, operate, repair, replace, renew and relocate towers, poles, wires, cables and all other necessary and convenient equipment for the transmission of electrical energy . . . all of which lines, towers, poles, and equipment therefor are hereinafter collectively termed 'equipment', with right of ingress and egress over the adjoining premises of [Majestic] for such purposes," with a particular area of land specified. In paragraph 9, it further provides that if U.S. Steel "shall fail to use said equipment for a period of five (5) consecutive years . . . then the rights herein granted, without further notice, immediately shall cease and terminate."

Majestic urges the Court to adopt a limited definition of the word "use" in the termination clause, arguing that the agreement contemplates that "use" is intended to mean "transmission of electrical energy." U.S. Steel disagrees, arguing that the purpose of the easement is much broader than merely transmission of electricity and construing it in the limited manner Majestic suggests would disregard the express language of the agreement and the expansive easement rights it grants

to U.S. Steel.

"An instrument creating an easement must be construed according to the intention of the parties, as ascertained from all facts and circumstances, and from an examination of all its material parts." *Parkison v. McCue*, 831 N.E.2d 118, 128 (Ind. Ct. App. 2005) (quoting *Brown v. Heidersbach*, 360 N.E.2d 614, 619-20 (Ind. Ct. App. 1977). If the language is ambiguous - that is, "susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning" - then the Court "may resort to extrinsic evidence to ascertain the intent of the grantors." *Id*. (citations omitted). "When trying to ascertain the intent of the parties, the court will read the contract as a whole. Additionally, the court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless" and is bound to "accept an interpretation of the contract that harmonizes its provisions rather than one that causes the provisions to conflict." *Winterton, LLC v. Winterton Investors, LLC*, 900 N.E.2d 754, 759 (Ind. Ct. App. 2009) (citations omitted).

Majestic argues that the Court should construe the term "use" in Paragraph 9 to explicitly mean "transmit electricity," arguing that the easement has been terminated since it is not being utilized for its primary purpose. Although it does not deny that U.S. Steel has used its right of ingress and egress and done maintenance work on the Transmission System, Majestic argues that such maintenance and repair work is not "using" the Transmission System. It argues that the only logical interpretation of the termination provision is to infer that "use" of the equipment means transmitting electricity, even though transmission of electricity is not referred to in Paragraph 9, and that U.S. Steel's rights of access and authority to install, maintain, and repair the equipment are mere privileges that allow U.S. Steel to carry out the purpose for which the easement was granted but do

9

not demonstrate actual "use" of the equipment.

U.S. Steel argues that "transmission of electrical energy" is the function of the equipment, and the purpose of the easement is to allow U.S. Steel "to install maintain, operate, repair, replace, renew and relocate towers, poles, wires, cables and all other necessary and convenient equipment" needed for that function, as laid out in Paragraph 1 of the Agreement. U.S. Steel argues that to interpret Paragraph 1 as Majestic urges would deny the Indiana rule of contract interpretation requiring that the Agreement be read as a whole. Further, U.S. Steel emphasizes that paragraph 9, which indicates that the easement rights terminate if U.S. Steel "shall fail to use said equipment for a period of five (5) consecutive years," does not include any reference to transmission of electricity. Paragraph 9 refers to "equipment," explicitly defined earlier in the Agreement as "towers, poles, wires, cables and all other necessary and convenient equipment for the transmission of electrical energy over two electrical power lines," and although the equipment provides for transmission of electricity, U.S. Steel argues that the term "use said equipment" is not equivalent to nor does it connote transmission of electricity, and that "use" of the equipment is not limited only to transmitting electricity.

U.S. Steel also emphasizes that forfeiture is disfavored by the law and that abandonment of an easement requires a finding that the grantee intended to entirely abandon use of the easement. It argues that its continued incurrence of maintenance and repair costs indicate that it has in no way abandoned its easement rights or violated the Easement Agreement to justify forfeiture. Majestic argues that the Agreement does not require abandonment of the easement for it to terminate, and that the termination provision is not subject to the rules of forfeiture.

Majestic repeatedly emphasizes that U.S. Steel has not transmitted electricity over the

10

Transmission System for at least twelve years, and that the Transmission System is incapable of transmitting enough electricity to provide full power to Gary Works. It urges the Court to conclude that the Transmission System cannot realistically be used in the future for provision of electricity, so that U.S. Steel cannot have any current or future intention to actually transmit electricity over the Transmission System. U.S. Steel does not argue that it can power Gary Works solely through electricity transmitted through the Transmission System, but claims that it maintains the equipment so that if it needs to supply some electricity to Gary Works through the Transmission System, it can do so. Although it has not chosen to do so, U.S. Steel emphasizes that the Transmission System *can* be used for the transmission of electrical power, such that U.S. Steel has in no way ceased to take advantage of the easement.

Both parties cite cases to support their desired definition of the word "use" in this context, but the only case cited by either party to address the meaning of the word "use" in the context of an easement for an electric transmission line is *Florida Power Corporation v. Lynn*, 594 So.2d 789 (Fl. 1992). In that case, the Florida court determined that, based on the language in the applicable easement agreement, "use" of the easement did not require constant transmission of electrical energy, although that was the primary purpose of the easement. *Id*. at 792. The grantee was given the right to "patrol, inspect, alter, improve, repair, rebuild or remove such lines, equipment and accessories," and the court concluded that, despite not transmitting electricity over the line for several years, the grantee "ha[d] actively used the property for the purposes specified in the granting of the easement and ha[d] continued to maintain the easement for the purpose of continuing that use in the reasonably foreseeable future" such that the easement was not terminated. *Id*. at 792-93 (emphasis omitted). However, this Court recognizes that the language in that easement contract differs from the language

11

in this case, as do the future intentions of the grantees, and that the Florida court's decision has no precedential value. The Court must consider the language in the Agreement that is now before it.

The intention of the Agreement, as laid out in the preamble, is "to define the rights of [U.S. Steel] to operate upon said lands of [Majestic] the aforesaid electrical power transmission lines." Furthermore, Paragraph 1 of the Agreement includes reference to the plural "purposes" of the easement for which ingress and egress would be permitted. In Paragraph 3, Majestic retains the right to use the land on which the transmission equipment is located "for any purpose or purposes which will not interfere materially with the maintenance or operation of said equipment." Reading the contract as a whole in a way that harmonizes all of its provisions, it appears to the Court that the purposes of the easement include "maintenance and operation" of the transmission equipment, since Majestic and its predecessors are prohibited from interfering with those actions. Accordingly, the Court concludes that the only reasonable meaning of the phrase "use said equipment" in the termination provision in Paragraph 9 refers to the multiple purposes laid out in Paragraph 1 and generally summarized as "maintenance and operation" in Paragraph 3. Therefore, because U.S. Steel has continued to maintain, inspect, repair, and otherwise keep the equipment in a condition such that it is able to transmit electricity, it has not ceased to use the equipment and its rights under the Agreement have not been terminated.

Rather than the car analogy that Majestic urges the Court to consider, in which a car granted for its "use" would not be "used" if it were not driven, the Court concludes that a more apt analogy would be that of a backup electrical generator. If a homeowner is granted the right to "use" a backup generator and maintains it over time – refilling its fuel, performing repairs when it breaks down, and keeping it available for use if the home's main power source fails – the homeowner has not ceased

to use the generator for its intended purpose just because the main power source has not failed or because the generator is only capable of providing a portion of the power the home normally uses.

Accordingly, the Court concludes that U.S. Steel's easement rights have not been terminated by its failure to transmit electricity over the Transmission System because it has continued to use the equipment as contemplated in the Easement Agreement. Summary judgment is granted in favor of U.S. Steel, and Majestic is not entitled to any damages or other requested relief.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Motion for Summary Judgment of United States Steel Corporation [DE 41], **DENIES** Plaintiff The Majestic Star Casino, LLC's Motion for Partial Summary Judgment and Designation of Evidence in Support of its Motion for Partial Summary Judgment [DE 39]; and **DENIES as moot** the Plaintiff The Majestic Star Casino, LLC's Motion to Strike Defendant United States Steel Corporation's Supplemental Designation [DE 52]. Plaintiff The Majestic Star Casino, LLC, shall take nothing by its Complaint in this case against Defendant United States Steel Corporation. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant United States Steel Corporation.

The Bench Trial setting, the Final Pre-Trial Conference setting, and all other previously established dates and deadlines in this case are hereby **VACATED**.

SO ORDERED this 10th day of August, 2011.

                                                s/ Paul R. Cherry
                                               MAGISTRATE JUDGE PAUL R. CHERRY
                                               UNITED STATES DISTRICT COURT

cc:    All counsel of record